Cowin, J.
The defendant Kevin Davis is charged with indecent assault and battery on a person over 14 (G.L.c. 265, s. 13H); assault and battery (G.L.c. 265, s. 13A); and rape (G.L.c. 265, s. 22(b)). The defendant has filed a motion to suppress a statement he allegedly made to the police on August 10, 1997 because the statement was made in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Articles 12 and 14 of the Massachusetts Declaration of Rights; that the defendant did not knowingly, intelligently and voluntarily waive his right to remain silent; and that the defendant’s statements were not a free and voluntary act.
A hearing was held on the defendant’s motion on June 3, 1998 at which Officer Brian Gill testified. After the hearing and evaluation of the credibility of the witnesses, the Court makes the following findings and rulings. ■
FINDINGS OF FACT
On August 10, 1997, at approximately 5:30 a.m., Officer Brian Gill of the Ayer Police Department responded to 39 Markham Circle as the result of receiving a dispatch. Officer Ramalho Minardi also responded in a separate cruiser. At 39 Markham Circle Officer Gill observed several people on the front lawn, one of whom was hysterical. She was yelling: “He raped me,” several times and “He had his fingers in me.” Upon further inquiiy, Officer Gill learned that the suspect was one Kevin Davis, the clothing he was wearing, and that he was on foot, headed south on Route 110. Officer Gill was also informed that Kevin Davis lived in Boxboro. The officer knew that Route 110 was the route to Boxboro.
Officer Gill then left the other officer to conduct further interviews and he drove on Route 110 into the town of Harvard, about 1V2 miles away. He drove very slowly, as he was looking side-to-side, seeking someone matching the defendant’s description. When he did not find anyone, Officer Gill turned around and drove back on Route 110 to the scene. Then the officer turned around again and drove back toward Harvard once more on Route 110. This time Officer Gill turned off his lights. (He thought that the suspect might have seen the cruiser lights earlier and hidden.)
Once in Harvard about one mile from Markham Circle, Officer Gill saw a male walking southbound on the southbound side of the road. By this time it was about 5:45 a.m. and just becoming light. The officer could see that the male fit the description he had been given of Kevin Davis. Therefore, the officer motioned for the man to wait and the officer turned his cruiser around. Officer Gill exited his cruiser and, standing beside the defendant, asked if he were Kevin Davis. The defendant responded: “Yes.” Officer Gill then asked him how he got all cut up and dirty and scraped. This question was asked in a calm, conversational tone. Kevin Davis responded: “When I saw the cruiser the first time I ran off the side of the road and ran into some barbed wire.”[1]
Officer Gill then placed the defendant in handcuffs and radioed that he had found the individual he was seeking and requested backup. The officer cuffed the defendant at that time because of the seriousness of the crime that was being investigated and because of a fear that the defendant might flee again as he said he had fled earlier upon seeing the cruiser. The backup officer arrived and informed Officer Gill that charges were going to be brought against Davis. Then Officer Gill told the defendant he was under arrest and read him his Miranda rights.
Officer Gill wrote a report later that night but did not note the defendant’s statement in his report. He did not believe that the response was significant at that time. During later investigation into the incident, Officer Gill related the statement to a detective and was informed that this statement might be significant to the case and that he should reduce the statement to writing in a police report. He did so.
DISCUSSION
The issue that must be resolved is whether Miranda warnings were necessary when Officer Gill originally asked the defendant how he had gotten his cuts and scrapes. The answer to this question depends upon whether the defendant was in custody at the time.
“Miranda warnings are required when a person is subjected to ‘custodial interrogation,’ i.e, ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ” Commonwealth v. Doyle, 12 Mass.App.Ct. 786, 792 (1981), quoting Miranda v. Arizona, 3 84 U.S. 436, 444 (1966). “The warnings are not required for ”[g]eneral on-the-scene questioning, as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." Commonwealth v. Doyle, supra, at 792, quoting Miranda v. Arizona, supra, at 477.
*490 Several factors have proven helpful In determining whether an investigation is custodial: “(1) the place of the interrogation: (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant’s arrest." Commonwealth v. Bryant, 390 Mass. 729, 736 (1984). The considerations in the second Bryant factor (whether the investigation has begun to focus on the suspect) “are material to the custody inquiiy only to the extent that an officer’s suspicions influence the objective conditions of an interrogation, such that a reasonable person in the position of the person being questioned would not feel free to leave the place of questioning." Commonwealth v. Morse, 427 Mass. 117, 124-35 (1998). “Save as they are communicated or otherwise manifested to the person being questioned, an officer’s evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the Miranda custody inquiry.” Id. at 124. [Citations omitted.] “[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.” Stansbury v. California, 511 U.S. 318, 323-24 (1994); Commonwealth v. Buckley, 410 Mass. 729, 739 (1991).
The first factor in the determination of whether the defendant reasonably could have been to be in custody is the place of the interrogation. Commonwealth v. Bryant, supra at 737. Here, the officer and the defendant were at the side of the road. Albeit, at 5:30 a.m., this was a lonely place. However, it was just dawn and was becoming light. Further, this location was a place in which the defendant had voluntarily placed himself. This was not a police station or any other type of "police dominated atmosphere for which the Miranda protections were tailored." Id.
At the time of the questioning, the investigation had clearly begun to focus on the defendant. The male whom Officer Gill stopped matched the description of the assailant; and he was on foot and heading in the direction of Boxboro. Officer Gill had been informed that the suspect was walking toward Boxboro. Further, after the first question Officer Gill knew that the person before him was indeed Kevin Davis, the alleged assailant. However, the fact that the investigation was now focused on the suspect was never conveyed by the officer to Kevin Davis. Thus, the officer’s “evolving but unarticulated suspicions do not affect the objective circumstances of [the] . . . interview and thus cannot affect the Miranda custody inquiry.” Commonwealth v. Morse, supra, at 124.
As to the nature of the interrogation, only two questions were asked. They were asked in a conversational, calm tone. There was only one officer present. He did not draw his weapon or present an overbearing manner.
Finally, as to whether the defendant was free to leave, Officer Gill did signal to Kevin Davis to wait until he (the officer) had turned his vehicle around. This was an indication that the man could not leave at that particular point. However, once the defendant had given his name, there is no reason to believe that a reasonable person in the defendant’s position would not have felt that he could leave. Although the officer knew at this point that this was the man who allegedly had raped Sarah Watson, the officer did not convey his suspicions to the defendant until after the question in issue had been asked and answered.
Further, in a very similar situation, Miranda warnings were not required. In Commonwealth v. Smith, 35 Mass.App.Ct. 655 (1993), shortly after the police learned that a blue-silver Dodge minivan had struck and killed two young women on Commonwealth Avenue in Boston, the police stopped such a van in an area near the accident and heading away from it. Before the police could say anything to the van’s occupants, tire driver said: “Why did you stop us? We didn’t hit anything.” The officers noticed considerable front end damage to the van and one officer asked the driver what had happened to his car. The driver responded: “I don’t know.” During that exchange, the police smelled alcohol on the driver’s breath. After that, the driver was given his Miranda rights. In Smith, the Court stated that although the act of pulling the car over meant the driver was not free to move away, a police officer is not required to approach a stopped vehicle “declaiming” Miranda warnings. Id. at 657. And the Court ruled that asking the driver what had happened to his damaged car was not the type of “incommunicado interrogation ... in a police-dominated atmosphere of the sort with which the Miranda case was concerned.” Id. at 658. [Citations omitted.] The same is true in this case. If the driver in Smith were not deemed to be in custody such that the Miranda rights were required, a fortiori Kevin Davis was not in custody and no Miranda rights were required. (In Smith, the police had the additional “consciousness of guilt” statement of the driver that they had not hit anything.)
Applying the Bryant factors, as informed by Morse, and the guidance of Smith to the facts of this case, I find that the defendant was not in custody at the time he made the statement regarding how he came to be cut and bruised. Accordingly, there was no requirement that he be given his Miranda rights before making said statement.
For all of the above reasons, the defendant’s motion to suppress is DENIED.

 It is this statement that the defendant seeks to suppress.